IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DRISCOLL'S INC.,<br><br>Plaintiff,<br>v.<br><br>BERRY FRESH LLC and<br>BERRY FRESH INC.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. No. ___________________<br><br>**Complaint and Demand for Jury Trial** |

**COMPLAINT**

Driscoll's Inc. ("Driscoll's" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants, Berry Fresh LLC and Berry Fresh Inc. (together, "Berry Fresh" or "Defendants"), and alleges as follows:

**NATURE OF ACTION**

1. This is an action for misappropriation of trade secrets arising under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b); for false advertising under the Lanham Act, 15 U.S.C. § 1125(a); and for related claims under state law.

**PARTIES**

2. Plaintiff Driscoll's is a California corporation with a principal place of business at 345 Westridge Drive, Watsonville, California 95076.

3. Upon information and belief, Defendant Berry Fresh LLC is a California limited liability company with a principal place of business at 19640 S. Rancho Way, Dominguez Hills, California 90220. Upon further information and belief, Berry Fresh

LLC's business includes the importation and distribution of fresh produce, including the berries at issue in this dispute. Upon still further information and belief, Berry Fresh LLC's registered agent for service of process is Paracorp Incorporated, located at 14001 W Hwy 29 Suite 102, Liberty Hill, TX, 78642.

4. Upon information and belief, Defendant Berry Fresh Inc. is a California corporation with a principal place of business at 19640 S. Rancho Way, Dominguez Hills, California 90220. Upon further information and belief, Berry Fresh Inc.'s business includes sales and distribution of fresh produce, including the berries at issue in this dispute. Upon still further information and belief, Berry Fresh Inc.'s registered agent for service of process is Patrice P. Roggemkamp, located at 19640 S. Rancho Way, Dominguez Hills, California 90220.

## **JURISDICTION AND VENUE**

5. This case arises under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA") and the Lanham Act, 15 U.S.C. § 1125(a).

6. This Court has original subject matter jurisdiction over the DTSA and Lanham Act claims this action under 28 U.S.C. §§ 1331 and 1338(a) because they arise under the laws of the United States. This Court has supplemental jurisdiction over Driscoll's state law claims under 28 U.S.C. § 1367 because those claims arise under a nucleus of facts common with the federal causes of action.

7. This Court has personal jurisdiction over both Defendants because, upon information and belief, both conduct continuous and systematic business in this District

and continue to do so. Specifically, upon information and belief, one or both of Defendants are responsible for importation of berries, including those involved in this dispute, into this District from Mexico under the Berry Fresh brand for distribution and sale throughout the United States, and upon further information and belief, more than half of Defendants' berries imported from Mexico enter the United States within this District for further distribution throughout the United States, including those involved in this dispute. The Court therefore has specific and general personal jurisdiction over Defendants.

8. This Court further has general personal jurisdiction over Defendants because, upon information and belief, they operate a place of business at 9000 S. Seguin Drive, Pharr, Texas 78577.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred and continue to occur in this District. Venue is also proper in this District under 28 U.S.C. § 1391(b)(1) because defendants are corporations or other business entities subject to personal jurisdiction in this District and therefore are deemed to reside in this District for venue purposes.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Business and Development of Its Proprietary Plant Genetics

10. Driscoll's was founded for the purpose of breeding, producing, and distributing fresh berries. Driscoll's vision and goal, since its inception, is to be able to provide a continuous supply of healthy, fresh berries to families across the United States

year-round. Driscoll's was founded as a collection of five farming families who realized that, by combining their efforts, they could more effectively provide consumers with fresh berries than by acting alone. In the years since, Driscoll's has grown to include a collection of roughly 900 family farming operations.

11. Throughout its history, Driscoll's continuously invests significant resources into the development of new varieties (also referred to as "cultivars") of berry plants with improved characteristics. Those include characteristics that are important to consumers, such as improved flavor profile and shelf life, and characteristics that are important to Driscoll's network of independent growers, such as improved yield, pest resistance (allowing for reduced pesticide usage), and drought tolerance (allowing for reduced water usage).

12. These breeding efforts rely heavily on Driscoll's proprietary plant varieties, also referred to as the company's "proprietary plant genetics," which Driscoll's has spent many years and millions of dollars developing. Driscoll's makes careful, reasoned, and deliberate choices regarding which of those proprietary varieties will be used as parents in carefully designed cross-pollinations to create new offspring for evaluation and eventual commercialization.

13. Every year, Driscoll's makes thousands of distinct crosses and plants well over 100,000 resulting seedlings for evaluation in its test plots. The plants selected from those seedlings are then evaluated over multiple years for numerous traits, eventually resulting in only a handful of new varieties that are selected for commercialization based on their unique combinations of characteristics. Thus, less than 0.01 percent of all the

potential new varieties that Driscoll's creates make the cut and are selected for commercialization. However, many of the varieties that are not ultimately commercialized are found to have valuable traits and are still used by Driscoll's as parental varieties in their breeding program. So, even the uncommercialized varieties are extremely valuable to Driscoll's.

14. Driscoll's has numerous facilities throughout the world where it conducts breeding and evaluation activities. These testing facilities are owned or leased and fully operated by Driscoll's and its affiliated companies. This is necessary because berry varieties often perform quite differently in different climates and growing environments, so it is important that breeding and evaluation activities be conducted in those distinct climates and growing environments. Relevant to the present dispute, Driscoll's conducts blackberry and raspberry breeding activities in Jalisco, Mexico through its subsidiary, Driscoll's Operaciones, S.A. de C.V. (together with its predecessor entity Driscoll's Servicios, S.A. de C.V., "Driscoll's Operaciones"), a Mexican business entity fully owned by Driscoll's.

15. In Driscoll's experience, it takes approximately ten years to develop a new blackberry or raspberry variety for commercialization, as measured from the time the initial cross is made, through all evaluation and selection steps, and finally to mass plant propagation for commercial-scale production. Throughout that time, Driscoll's continually evaluates the varieties for numerous characteristics, with each evaluation stage involving fewer varieties that are under evaluation, but an increasing number of plants and data points for each candidate variety. In the first year, just a single plant of each variety is evaluated,

and a relatively small amount of genetic and phenotypic data is collected. However, a few years into the process, Driscoll's breeders evaluate hundreds of plants of each variety, and at the pre-commercial end of the process there can be thousands of plants evaluated. During the middle and late stages of evaluation, Driscoll's accumulates many thousands of data points on each candidate variety, from field characteristics to postharvest fruit quality and consumer-facing traits. While this process is costly and time consuming, Driscoll's understands that the investment is important because consumers and Driscoll's growers strongly desire improved berry varieties.

16. Driscoll's business is primarily focused on such development of new and improved berry varieties that are marketed under the Driscoll's brand. It then licenses the proprietary plant varieties it develops to a network of hundreds of independent growers to cultivate the plants and harvest the resulting berries for commercial sale throughout the world under the Driscoll's brand. As such, Driscoll's proprietary plant genetics are the lifeblood of not only its business, but also the business of hundreds of independent family farms.

**B. Measures Taken to Keep the Information Secret**

17. Driscoll's undertakes reasonable measures to guard the secrecy of its proprietary plant varieties. For example, employees who have access to such plants routinely sign employment agreements having confidentiality provisions. Employees also have obligations around inventorship and restrictions on use of Driscoll's intellectual property. Likewise, Driscoll's restricts access to such plants; for example, when they are

planted in fields or test plots, only those employees whose presence is necessary for the cultivation and evaluation of the plants have access.

18. Further, even after Driscoll's commercializes a proprietary plant variety, Driscoll's restricts access to plant material of the variety to only entities that have signed an appropriate agreement with Driscoll's. Those agreements restrict the ability of the grower, nursery, or third party to utilize Driscoll's proprietary plants for any purpose outside of production of fruit for sale, authorized propagation, or other specified services. Agreement holders are not permitted to sell or otherwise distribute any plant material (other than fruit for commercial sale) and are not permitted to breed with Driscoll's proprietary plant varieties.

**C. Defendants' Access to the Information**

19. From about November 2008 to about June 2013, Driscoll's Operaciones employed Jose Maurilio Rodriguez Mesa ("Mr. Rodriguez"), initially as a test plot assistant and then as a test field supervisor, at its Los Reyes test plot in Jalisco, Mexico. Driscoll's terminated Mr. Rodriguez's employment in or around June 2013 for failing to complete work related tasks that were asked of him. At that time, Mr. Rodriguez was believed to be disgruntled for not being listed as a breeder on certain patents and otherwise for what he perceived as a lack of recognition.

20. During his employment, Mr. Rodriguez served under the terms of an employment contract he signed on or about November 17, 2008. That agreement contained confidentiality and non-disclosure provisions that prohibited Mr. Rodriguez from disclosing any Driscoll's confidential information. The agreement also contained

obligations not to compete with Driscoll's during employment and to return all employer property, confidential information, and potentially commercial or industrial secrets. Driscoll's further understands that, under Mexican law, Mr. Rodriguez had an obligation to assign inventions created during his employment to Driscoll's.

21. In or around 2021, a member of Driscoll's blackberry breeding team reached out to Mr. Rodriguez via LinkedIn to ascertain whether Mr. Rodriguez might be interested in applying for another position at Driscoll's, based at least in part on the reputation he had gained as a blackberry breeder. Mr. Rodriguez advised Driscoll's at that time that, while he thanked Driscoll's for considering him, he wished to remain with his then-current employer because it was the best situation for him and his family.

**D. Plaintiff's Discovery of the Misappropriation and Defendants' Conduct After Discovery**

22. Around May 2023, members of Driscoll's Business Group began a market survey of competitors' blackberry breeding programs in Mexico. As part of that project, they embarked on a trip to visit grower sites in Mexico. During this trip, the Business Group members discussed competing breeding programs and recent revelations that some breeding programs had developed strong blackberry and raspberry varieties (collectively "*Rubus*") surprisingly quickly, knowing that this normally takes many years to accomplish. This led to competitive analysis over the next 6-8 months of various *Rubus* programs, including review of plant patent and plant breeder rights applications and grants ("Plant Variety Rights"). In or around December 2023, the picture became clearer as Driscoll's learned of instances of Mr. Rodriguez's name associated with several commercial varieties

grown by competitors, and Plant Variety Rights from some of the competitive breeding programs evaluated. The Plant Variety Rights associated with SWEET KAROLINE® blackberries and Daniela™ raspberries are two of these instances. This led Driscoll's to launch a more thorough investigation that uncovered the following facts.

23. Upon information and belief, Mr. Rodriguez began working as a plant breeder for Expoberries, S.A. de C.V. ("Expoberries") in or around September 2015.

24. Upon information and belief, Expoberries is a Mexican business that grows and exports berries for human consumption, including export to the United States.

25. On October 17, 2019, Expoberries filed U.S. Patent Application No. 16/602,486 for "Blackberry Plant Named 'EXPB3181'," listing Mr. Rodriguez as the sole inventor. This application issued as U.S. Plant Patent PP32,907 ("the '907 Patent") on March 23, 2021. A true and correct copy of the '907 Patent is attached to this Complaint as Exhibit A. (with color Figures appended). Upon information and belief, the plant described in the '907 Patent is the SWEET KAROLINE® blackberry variety. The '907 Patent is directed to an allegedly "new and distinct primocane fruiting blackberry variety." It states that the variety is the result of a hand-pollinated cross between a blackberry plant of the 'Kiowa' variety,[1] covered by U.S. Plant Patent PP9,861, and a non-patented blackberry variety designated as 'SP709'. The '907 Patent states that this cross occurred in Los Reyes, Michoacán, México. Upon information and belief gained after the December 2023 investigation began, at least one of these listed parent plants is incorrect, based on

[1] Single quotation marks are used to designate plant variety names.

genetic testing of SWEET KAROLINE® fruit performed by Driscoll's starting in 2024. Due to the fruiting season for SWEET KAROLINE®, Driscoll's was unable to obtain fruit to test and confirm until March 2024.

26. U.S. Plant Patent PP32,948 ("the '948 Patent") issued April 6, 2021. A true and correct copy of the '948 Patent is attached to this Complaint as Exhibit B (with color Figures appended). Its title is "Raspberry Plant Named 'EXPR02.'" The '948 Patent lists Expoberries as the Applicant and Assignee and Mr. Rodriguez as the Inventor. Upon information and belief, the plant described in the '948 Patent is the Daniela™ raspberry variety. It purports to be a new and distinct autumn primocane raspberry that is a result of cross pollination between two parent raspberry plants: 'SP821' (unpatented) and 'SP804' (unpatented). The '948 Patent states that this cross occurred in Los Reyes, Michoacán, México. Upon information and belief gained after the December 2023 investigation began, at least one of these listed parent plants is also likely incorrect.

27. Both patents state that the initial cross-pollination to create the new cultivar was performed in 2013 and initially fruited in or around autumn 2014. Upon information and belief, the timeline stated in the patents is incorrect. Based upon the natural cycles of blackberry and raspberry growth, for the cross that generated the new varieties to have occurred after Mr. Rodriguez was no longer employed by Driscoll's (*i.e.*, cross in July 2013 or later), the fruit would not have been harvested until winter 2014 or spring 2015. Conversely, for fruit from the cross to be harvested in autumn 2014, the cross would have occurred at the latest by early 2013, when Mr. Rodriguez was still employed by Driscoll's.

28. In early 2024, when fruit became available for the season, Driscoll's purchased SWEET KAROLINE® blackberries from grocery stores in California and had them genetically tested in March-April 2024. The tests also included samples of proprietary plant varieties that Driscoll's had maintained in its Mexico test fields during the time of Mr. Rodriguez's employment, along with other publicly and commercially available blackberries as comparators. The genetic testing showed a high degree of similarity between the SWEET KAROLINE® blackberries and Driscoll's proprietary blackberry varieties that were being grown at the Driscoll's facility where Mr. Rodriguez was employed. None of the other comparators had a genetic similarity that was nearly as close as the relationship between the SWEET KAROLINE® blackberries and the plant varieties from Driscoll's test site.

29. In early 2024, when fruit became available for the season, Driscoll's also purchased raspberries it believed were of the Daniela™ variety from grocery stores in California, USA and had them genetically tested in March-April 2024 against public varieties and against Driscoll's proprietary raspberry varieties that were being grown in Driscoll's test plot in Mexico where Mr. Rodriguez was employed. The genetic testing showed a high degree of similarity between the Daniela™ raspberries and certain Driscoll's proprietary raspberry varieties that were being grown in Driscoll's test plot in Mexico during the time of Mr. Rodriguez's employment. None of the other comparators had genetic similarity that was nearly as close as the relationship between the Daniela™ raspberries and the plant varieties from Driscoll's test site.

30. In 2026, Driscoll's conducted further genetic testing on SWEET KAROLINE® that provided a comparison of SWEET KAROLINE® to about 100 other blackberry varieties. The data were analyzed using multiple different analysis and visualization tools. The results of these tests show that: 'Kiowa', a blackberry listed in the '907 Patent as an alleged parent of 'EXPB3181', cannot be a parent of SWEET KAROLINE® due to insufficient genetic similarity; of the about 100 varieties tested, the three closest genetic relatives to SWEET KAROLINE® are proprietary Driscoll's varieties; and SWEET KAROLINE® is as genetically similar to one of the proprietary Driscoll's varieties as that variety is to its own known parent plant. From this, Driscoll's determined that it is highly likely that one of those three closest genetic relatives is a parent or sibling of SWEET KAROLINE®.

31. On information and belief, including the results of the genetic testing, taken in conjunction with the problematic breeding timeline described in the patents directed toward the SWEET KAROLINE® and Daniela™ varieties and the knowledge that Mr. Rodriguez had access to Driscoll's proprietary blackberry and raspberry varieties at its Los Reyes test facility, Driscoll's asserts that the SWEET KAROLINE® ('EXPB3181') blackberry and Daniela™ ('EXPR02') raspberry varieties were misappropriated by Mr. Rodriguez from the Driscoll's test plot at which he was employed.

32. As such, on information and belief, Driscoll's asserts that the proper inventor of U.S. Plant Patent PP32,907 for blackberry variety 'EXPB3181', which, on information belief, is the SWEET KAROLINE® blackberry variety, is Gavin Sills, the head blackberry breeder at Driscoll's at the relevant time, who directed all blackberry breeding activities.

33. Similarly, on information and belief, Driscoll's asserts that the proper inventor of U.S. Plant Patent PP32,948 for blackberry variety 'EXPR02', which, on information belief, is the Daniela™ raspberry variety, is Matthias Vitten, the head raspberry breeder at Driscoll's at the relevant time, who directed all raspberry breeding activities.

34. Further, based on those proper inventors, Driscoll's asserts, on information and belief, that the proper owner of those patents and varieties is Driscoll's Inc., the company to which Gavin Sills and Matthias Vitten were required to assign all inventions in the relevant time period.

35. Upon information and belief, Defendants purchase SWEET KAROLINE® blackberries and Daniela™ raspberries from Expoberries in Mexico and import the berries into the United States, primarily through land-based ports of entry, such as in McAllen, Texas and Otay Mesa, California. Defendants further market SWEET KAROLINE® blackberries and Daniela™ raspberries via the Internet and other channels and sell SWEET KAROLINE® blackberries and Daniela™ raspberries throughout the United States. Defendants have further announced that they have begun growing SWEET KAROLINE® blackberry plants in the United States, which upon information and belief is for the purpose of cultivation, distribution, and sale of the berries throughout the United States.

36. In or about March 2024, Driscoll's notified Defendants of the genetic test results that provided evidence of the likely improper actions taken by Mr. Rodriguez, and possibly others, in developing the SWEET KAROLINE® and Daniela™ varieties, and sought to resolve the dispute amicably. Those attempts at resolving this dispute were unsuccessful.

37. Defendants have not ceased their importation, marketing, and sale of SWEET KAROLINE® blackberries and Daniela™ raspberries and continue to engage in these activities to this day.

**E. Defendants' False Advertising**

38. Upon information and belief, retailers, such as grocery store chains, seek to obtain high-quality products to sell to their customers. Therefore, upon information and belief, such store chains rely on the advertising of manufacturers and distributors when selecting which brands to carry in their stores and offer for sale to consumers.

39. Defendants advertise the SWEET KAROLINE® blackberries through such statements as "a premium blackberry, perfected over seven years," "a testament to our exclusive breeding program," and "cross-pollinating two blackberry plants, just as nature does, to develop new varieties with improved genetics." (Exhibit C). Such statements give the SWEET KAROLINE® blackberries the air of being developed through a sophisticated and meticulous process that results in a superior berry.

40. Upon information and belief, retailers rely upon such statements when selecting products to sell in their stores.

41. Upon information and belief, these statements are false, or, if not literally false, then misleading and deceptive. As outlined above, the SWEET KAROLINE® blackberry was not derived from a lengthy, exclusive breeding program pursued by Defendants, but rather is the result of the misappropriation of Driscoll's proprietary materials.

42. Upon information and belief, Driscoll's was deprived of retail contracts with grocery store chains due at least in part to such statements.

## CLAIMS FOR RELIEF

### COUNT I
### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DTSA
### 18 U.S.C. § 1836

43. Driscoll's re-alleges and incorporates by reference the allegations in paragraphs 1 through 42.

44. Driscoll's proprietary plant material and varieties constitute trade secrets.

45. Each of these plant varieties derives independent economic value, actual and/or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

46. The genetic makeup of Driscoll's plants derives economic value from its confidentiality. If competitors have or gain access to Driscoll's plants, they could reproduce those plants to obtain desirable traits in the plants or the berries produced by the plants.

47. Driscoll's test plants are never made available to the public for reproduction or genetic testing. Further, the fruit produced by a test plant cannot be used to produce another plant of that same variety, as the genetic information within the fruit's seeds differs from that of the test plant from which it came.

48. Driscoll's took reasonable measures to keep its test plants secret, including through confidentiality, non-compete, non-disclosure, and return-of-employer-property provisions in employment contracts with its employees, including Mr. Rodriguez.

49. Each of these trade secret test plants is intended for potential use in interstate commerce through the production and sale of berries to the public.

50. Defendants misappropriated Driscoll's trade secrets at least through their continued importation and sale of the SWEET KAROLINE® blackberries and Daniela™ raspberries after Driscoll's made Defendants aware of their improper origin in or around March 2024.

51. Through that continued importation and sale, Defendants have violated the DTSA, 18 U.S.C. § 1832 *et seq*.

52. Defendants' importation and sale of the patented plants and/or plant material therefrom, including SWEET KAROLINE® blackberries and Daniela™ raspberries, constitute uses in interstate commerce.

53. As a direct and proximate result of Defendants' violation of the DTSA, Driscoll's suffered compensatory and consequential damages and is entitled to those damages, as well as full attorneys' fees, costs, and expenses.

54. Defendants' actions in misappropriating Driscoll's proprietary, trade secret information for their own gain was willful, wanton, and malicious, and taken with reckless disregard for the rights of Driscoll's. Driscoll's is thus entitled to exemplary damages of twice the amount of damages for any actual loss and any unjust enrichment gained by Defendants.

55. Defendants' actions have caused and will continue to cause Driscoll's irreparable harm that is not adequately remedied at law, including at least through loss of market share, and that requires permanent injunctive relief preventing actual, continued, or threatened misappropriation of Driscoll's trade secrets, including an injunction barring Defendant from importing the plants or plant material therefrom, including the berries, into the United States, cultivating the plants or harvesting the berries in the United States, and selling the plants or plant material therefrom, including the berries, in or from the United States.

## COUNT II
## MISAPPROPRIATION UNDER TEXAS COMMON LAW

56. Driscoll's re-alleges and incorporates by reference the allegations in paragraphs 1 through 42.

57. Driscoll's proprietary plant material and varieties constitute trade secrets.

58. Each of these plant varieties derives independent economic value, actual and/or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

59. The genetic makeup of Driscoll's plants derives economic value from its confidentiality. If competitors have or gain access to Driscoll's plants, they could reproduce those plants to obtain desirable traits in the plants or the berries produced by the plants.

60. Driscoll's test plants are never made available to the public for reproduction or genetic testing. Further, the fruit produced by a test plant cannot be used to produce another plant of that same variety, as the genetic information within the fruit's seeds differs from that of the test plant from which it came

61. Driscoll's took reasonable measures to keep its test plants secret, including through confidentiality, non-compete, non-disclosure, and return-of-employer-property provisions in employment contracts with its employees, including Mr. Rodriguez.

62. Each of these trade secret test plants is intended for potential use in United States commerce through the production and sale of berries to the public.

63. Defendants misappropriated Driscoll's trade secrets at least through their continued importation and sale of the SWEET KAROLINE® blackberries and Daniela™ raspberries into and through Texas after Driscoll's made Defendant aware of their improper origin in or around March 2024.

64. Defendants' misappropriation is a continuation of a misappropriation that began with Mr. Rodriguez before September 2013, and therefore is not governed by the Texas Uniform Trade Secrets Act ("TUTSA").

65. As a direct and proximate result of Defendants' violation of Texas common law, Driscoll's suffered damages and is entitled to those damages, as well as full attorneys' fees, costs, and expenses.

66. Defendants' actions in misappropriating Driscoll's proprietary, trade secret information for their own gain after March 2024 were taken with gross negligence with respect for the rights of Driscoll's. Driscoll's is thus entitled to exemplary damages.

67. Defendants' actions have caused and will continue to cause Driscoll's irreparable harm that is not adequately remedied at law, including at least through loss of market share, and that requires permanent injunctive relief preventing actual, continued, or threatened misappropriation of Driscoll's trade secrets, including an injunction barring Defendant from importing the plants or plant material therefrom, including the berries, into the United States, cultivating the plants or harvesting the berries in the United States, and selling the plants or plant material therefrom, including the berries, in or from the United States.

## COUNT III
### IN THE ALTERNATIVE TO COUNT II
### MISAPPROPRIATION UNDER THE TEXAS UNIFORM TRADE SECRETS ACT
### Tex. Civ. Prac. & Rem. Code ch. 134A, §§ 134A.001 et seq.

68. Driscoll's re-alleges and incorporates by reference the allegations in paragraphs 1 through 42.

69. Driscoll's proprietary plant material and varieties constitute trade secrets.

70. Each of these plant varieties derives independent economic value, actual and/or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

71. The genetic makeup of Driscoll's plants derives economic value from its confidentiality. If competitors have or gain access to Driscoll's plants, they could reproduce those plants to obtain desirable traits in the plants or the berries produced by the plants.

72. Driscoll's test plants are never made available to the public for reproduction or genetic testing. Further, the fruit produced by a test plant cannot be used to produce another plant of that same variety, as the genetic information within the fruit's seeds differs from that of the test plant from which it came

73. Driscoll's took reasonable measures to keep its test plants secret, including through confidentiality, non-compete, non-disclosure, and return-of-employer-property provisions in employment contracts with its employees, including Mr. Rodriguez.

74. Each of these trade secret test plants is intended for potential use in United States commerce through the production and sale of berries to the public.

75. Defendants misappropriated Driscoll's trade secrets at least through their continued importation and sale of the SWEET KAROLINE® blackberries and Daniela™ raspberries into and through Texas after Driscoll's made Defendants aware of their improper origin in or around March 2024.

76. Through that continued importation and sale, Defendants have violated the Texas Uniform Trade Secrets Act ("TUTSA").

77. As a direct and proximate result of Defendants' violation of the TUTSA, Driscoll's suffered compensatory and consequential damages and is entitled to those damages, as well as full attorneys' fees, costs, and expenses.

78. Defendants' actions in misappropriating Driscoll's proprietary, trade secret information for their own gain was willful, wanton, and malicious, and taken with reckless disregard for the rights of Driscoll's. Driscoll's is thus entitled to exemplary damages of

twice the amount of damages for any actual loss and any unjust enrichment gained by Defendants.

79. Defendants' actions have caused and will continue to cause Driscoll's irreparable harm that is not adequately remedied at law, including at least through loss of market share, and that requires permanent injunctive relief preventing actual, continued, or threatened misappropriation of Driscoll's trade secrets, including an injunction barring Defendant from importing the plants or plant material therefrom, including the berries, into the United States, cultivating the plants or harvesting the berries in the United States, and selling the plants or plant material therefrom, including the berries, in or from the United States.

## COUNT IV
### FALSE ADVERTISING UNDER THE LANHAM ACT
### 15 U.S.C. § 1125(a)

80. Driscoll's re-alleges and incorporates by reference the allegations in paragraphs 1 through 42.

81. Defendants' statements about the SWEET KAROLINE® blackberries, including those described above in paragraphs 38-42, are literally false and/or misleading.

82. Defendants' made the false and/or misleading statements willfully.

83. Purchasers, such as grocery store chains and other retailers, were misled or deceived by Defendants' false statements into believing that the SWEET KAROLINE® blackberries are of superior quality to those offered by other blackberry growers and distributors.

84. The purchasers' mistaken beliefs were material in their decisions to stock SWEET KAROLINE® blackberries in their stores as the expense of or in addition to other blackberries.

85. SWEET KAROLINE® blackberries travel in interstate commerce.

86. Driscoll's has been harmed, and will continue to be harmed, by Defendants' false or misleading statements, at least through loss of sales, loss of goodwill, and/or diminished reputation.

87. Driscoll's is therefore entitled to damages and Defendants' profits as to be determined at trial, plus full attorneys' fees, costs, and expenses.

88. Defendants' actions have caused and will continue to cause Driscoll's irreparable harm that is not adequately remedied at law, including at least through loss of market share, and that requires permanent injunctive relief preventing continued statements such as those complained of herein.

## **DEMAND FOR JURY TRIAL**

89. Driscoll's demands a jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

90. WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants for the following:

a. Compensatory and consequential damages for Defendants' misappropriation of Driscoll's trade secrets and for Defendants' false advertising;

b. Exemplary damages of twice the amount of any loss to Driscoll's caused by Defendants' misappropriation of Driscoll's trade secrets;

c. Treble damages for Defendants' willful and knowing false advertising;

d. Disgorgement of Defendants' profits;

e. Permanent injunctive relief against any and all further use of Driscoll's trade secrets or information and products derived therefrom, including an injunction barring Defendant from importing the plants or plant material therefrom, including the berries, into the United States, cultivating the plants or harvesting the berries in the United States, and selling the plants or plant material therefrom, including the berries, in or from the United States;

f. Permanent injunctive relief requiring Defendants to destroy or turn over any plants in their possession, custody, or control which are capable of growing SWEET KAROLINE® blackberries and/or Daniela™ raspberries;

g. Permanent injunctive relief against any and all further false and/or misleading statements about the breeding of SWEET KAROLINE® blackberries;

h. Pre-judgment and post-judgment interest;

i. Driscoll's attorneys' fees;

j. Driscoll's costs in connection with this action; and

k. An award of such other and further relief, at law or in equity, as the Court may deem just and proper.

Dated: November 19, 2026

Respectfully submitted,

*/s/ George T. Shipley*

George T. Shipley
Texas State Bar No. 18267100
S.D. No. 02118
SHIPLEY SNELL MONTGOMERY LLP
717 Texas Ave., Ste. 1800
Houston, Texas 77002
T: (713) 652-5920
F: (713) 652-3057
gshipley@shipleysnell.com

ATTORNEY-IN-CHARGE FOR
PLAINTIFF DRISCOLL'S INC.

OF COUNSEL:

Stephanie M. Gregoire
Texas State Bar No. 24149030
S.D. No. 3981249
SHIPLEY SNELL MONTGOMERY LLP
717 Texas Ave., Ste. 1800
Houston, Texas 77002
T: (713) 652-5920
F: (713) 652-3057
sgregoire@shipleysnell.com

Travis W. Bliss*
Keith A. Jones*
Ava E. Lutz*
PANITCH SCHWARZE BELISARIO & NADEL LLP
Delaware Corporate Center
1 Righter Parkway, Suite 220
Wilmington, DE 19803
Tel: (302) 394-6030
Fax: (215) 965-1331
tbliss@panitchlaw.com
kjones@panitchlaw.com
alutz@panitchlaw.com

Philip L. Hirschhorn*
PANITCH SCHWARZE BELISARIO & NADEL LLP
One Commerce Square
2005 Market Street, Suite 3325
Philadelphia, PA 19103
Tel: (215) 965-1330
Fax: (215) 965-1331
phirschhorn@panitchlaw.com

* *Pro hac vice forthcoming*